IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Hanover Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No. |
| v. | ) | |
| | ) | |
| Peachtree Orthopaedic Clinic, P.A. and | ) | |
| | ) | |
| David Wexler, | ) | |
| | ) | |
| Defendants. | ) | |

## Complaint for Declaratory Action

Comes now the plaintiff, Hanover Insurance Company (hereinafter "Hanover"), and seeks declaratory relief, pursuant to 28 U.S.C. § 2201 *et. seq.* and F.R.Civ.P. 57, showing this Honorable Court the following as justification for such relief:

## Summary of Action

1.

This declaratory judgment action arises out of claims of damages arising from injuries allegedly suffered by David Wexler and by a class of all

similarly situated individuals as a result of a 2016 data breach of Peachtree
Orthopaedic computer records concerning Peachtree Orthopaedic patients.

2.

Hanover seeks a declaration regarding the parties' rights and
obligations, if any under the umbrella insurance coverage form contained in
Hanover Policy No. OHA-A034222-03, effective 06/20/2015 – 10/01/2016
(hereinafter, "the Policy").

3.

Hanover seeks a declaration that it is not obligated to defend Peachtree
Orthopaedic under the Policy in connection with the class action lawsuit
styled *David Wexler, individually, and on behalf of a class of all similarly
situated individuals, Plaintiff v. Peachtree Orthopaedic Clinic, P.A.,
Defendant,* Superior Court of Fulton County, Civil Action File No.
2016CV284076 and seeks recoupment of the amount of Peachtree
Orthopaedic's defenses costs paid by Hanover pursuant to its reservation of
rights.

**Parties, Jurisdiction and Venue**

4.

Plaintiff Hanover is a New Hampshire corporation with its principal
place of business in Worcester, Massachusetts.

2

5.

Defendant Peachtree Orthopaedic Clinic, P.A. (hereinafter, "Peachtree Orthopaedic") is a Georgia corporation with its principal place of business at 2001 Peachtree Road, N.E., Suite 705, Atlanta, Georgia 30309-1476, located in the Northern District of Georgia.

6.

Defendant David Wexler is a resident of Fulton County, Georgia located in the Northern District of Georgia.

7.

This Court has diversity jurisdiction under 28 U.S.C. § 1332(a).

8.

Venue is proper in this district under 28 U.S.C. § 1391(b).

9.

The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

**The Policy**

10.

Hanover issued Commercial Liability Policy No. OHA-A034222-03 for the policy period June 20, 2015 to October 1, 2016 to Peachtree Orthopaedic. ("the Policy").  A true and correct copy of the Policy is attached as Exhibit A.

11.

The Policy was delivered to Peachtree Orthopaedic at 2001 Peachtree

Road, NE, Suite 705, Atlanta, Georgia  30309.

12.

The Commercial Liability Umbrella Coverage Form states the
following:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

**1.  Insurance Agreement**

"We will pay on behalf of the insured the 'ultimate net loss' in excess of

the 'retained limit' because of 'bodily injury' or 'property damage' to

which this insurance applies. We will have the right and duty to defend

the insured against any 'suit' seeking damages for such 'bodily injury'

or 'property damage' when the 'underlying insurance' does not provide

coverage or the limits of 'underlying insurance' have been exhausted.

When we have no duty to defend, we will have the right to defend, or to

participate in the defense of, the insured against any other 'suit'

seeking damages to which this insurance may apply.  However, we will

have no duty to defend the insured against any 'suit' seeking damages

for 'bodily injury' or 'property damage' to which this insurance does not apply."

(Exhibit A, Bates Page No. 000180, Commercial Liability Umbrella Coverage Form, CU 00 01 12 07, p. 1).

13.

Coverage A of the Commercial Liability Umbrella Coverage Form states the following:

"**b.** this insurance applies to 'bodily injury' and 'property damage' only if:

    (1)   The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory';

    (2)   The 'bodily injury' or 'property damage' occurs during the policy period;…"

(Exhibit A, 000180).

14.

The Commercial Liability Umbrella Coverage Form of the Policy defines "Bodily injury" as the following:

"**3.**   'Bodily injury' means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of

5

these at any time.  'Bodily injury' includes mental anguish or other mental injury resulting from 'bodily injury'."

(Exhibit A, 000193).

15.

The Commercial Liability Umbrella Coverage Form of the Policy defines "Property Damage" as the following:

"18.  'Property damage' means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

    or

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

    *            *            *

For the purposes of this insurance, with respect to other than ownership, maintenance or use of 'covered autos', electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CDROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment."

(Exhibit A, 000195).

16.

The Policy's Coverage A of the Commercial Liability Coverage Form contains the following exclusion:

"t.  Electronic Data

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CDROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment."

(Exhibit A, 000184).

7

17.

The Commercial Liability Umbrella Coverage Form of the Policy states the following:

"**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** Insuring Agreement

    **a.**  We will pay on behalf of the insured the 'ultimate loss' in excess of the 'retained limit' because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking damages for such 'personal and advertising injury' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted.  When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply…

*                    *                    *

**b.** this insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

(Exhibit A, 000185).

18.

Coverage B of the Commercial Liability Umbrella Coverage Form of the Policy defines "Personal and advertising injury" as follows:

"14.  'Personal and advertising injury' means injury including consequential 'Bodily Injury', arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.   The use of another's advertising idea in your 'advertisement';  or

    g.   Infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

(Exhibit A, 000194).

### The Underlying Action

19.

On December 22, 2016, defendant David Wexler filed a class action lawsuit against Peachtree Orthopaedic, styled David Wexler, individually, and on behalf of a class of all similarly situated individuals, Plaintiff v. Peachtree Orthopaedic Clinic, P.A., Defendant, Fulton County Superior Court, Civil Action File No. 2016CV284076.  ("the Complaint").  A stamped filed copy of this complaint is attached as Exhibit B.

20.

Hanover has offered to defend Peachtree Orthopaedic in the *Wexler* case under a reservation of rights.

21.

The Complaint alleges that Peachtree Orthopaedic "collects and stores highly confidential information about its patients."  (Exhibit B, ¶ 2).

10

22.

The Complaint alleges that plaintiff Wexler was a patient of Peachtree Orthopaedic from 2013-2014.  (Exhibit B, ¶ 3).

23.

The Complaint alleges that, "On October 4, 2016, Peachtree Orthopaedic published a notice on its website that confirmed an 'intrusion' into its network had occurred and stated that certain confidential patient records had potentially been exposed (the 'Data Breach')."  (Exhibit B, ¶ 4).

24.

The Complaint alleges that, "By letter dated October 7, 2016, Peachtree Orthopaedic informed Plaintiff that his confidential information had been 'potentially taken' in the Data Breach.  The misappropriation information included Plaintiff's 'home address, email address, and date of birth,' as well as his 'patient treatment codes, prescription records, or social security number."  (Exhibit B, ¶ 5).

25.

The Complaint alleges that, "On November 18, 2016, Peachtree Orthopaedic filed a notice with the Department of Health and Human Services about the Data Breach.  Peachtree Orthopaedic stated that its

network server was subject to a 'Hacking/IT Incident' which affected 531,000 records."  (Exhibit B, ¶ 7).

28.

The Complaint alleges that, "For the reasons set forth below, Plaintiff seeks monetary damages to compensate himself and all other similarly situated individuals for current and future losses, injunctive relief requiring safeguards against another failure of Peachtree Orthopaedic security systems, and full and complaint information about the Data Breach." (Exhibit B, ¶ 11).

29.

The Complaint alleges that, "Peachtree Orthopaedic was negligent in failing to comply with its legal duty to protect patient information and monitor the systems from unauthorized access."  (Exhibit B, ¶ 17).

30.

The Complaint alleges that, "Plaintiff and the Class, as victims of the Data Breach, have suffered – and are at imminent risk of further suffering – identity theft and other harm.  Identity thieves can use personal information to perpetuate a variety of crimes that harm the victims.  For instance, identify thieves may commit immigration fraud, obtain a driver's license or identification to obtain government benefits, or file a fraudulent tax return

using the victim's information to obtain a fraudulent refund."  (Exhibit B, ¶ 40).

31.

Count I of the Complaint alleges that Peachtree Orthopeadic was negligent in failing to safeguard and protect patient data kept in Orthopaedic's computer system.  The Complaint alleges such negligent conduct, "proximately caused Plaintiff and the Class to suffer injury." (Exhibit B, ¶ 60-66).

32.

Count II of the Complaint alleges that Peachtree Orthopaedic was negligent per se in failing to safeguard and protect patient data kept in Orthopaedic's computer system.  The Complaint alleges that as a direct and proximate result of such conduct, "Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial." (Exhibit B, ¶ 67-76).

33.

Count III of the Complaint alleges that Peachtree Orthopaedic violated the Georgia Data Breach Statute, O.C.G.A. § 10-1-910, et seq. by failing to properly notify potential victims of the Data Breach.  (Exhibit B, ¶ 77-83).

34.

In Count III of the Complaint, the plaintiff alleges that, "Plaintiff and the Class have suffered damages alleged above as a direct and proximate result of Peachtree Orthopaedic's delay in providing timely and accurate notice of the Data Breach.  Further, had Peachtree Orthopaedic provided timely and accurate notice, Plaintiff and the Class would have been able to avoid and/or attempt mitigate the damages and harm resulting from the unreasonable delay by Peachtree Orthopaedic in providing notice."   (Exhibit B, ¶ 82).

35.

In the prayers of the Complaint, following paragraph 83, the plaintiff requested "appropriate monetary relief, including actual damages, restitution, and disgorgement" and requested that Peachtree Orthopaedic pay plaintiff's counsel's attorneys' fees, expenses, and the costs of the action. (Exhibit B, p. 28-30)

## Count I

## Declaratory Judgment

36.

Hanover incorporates by referenced the allegations contained in paragraphs 1-35 as if fully set forth herein.

37.

The damages alleged to be sought in the Complaint do not constitute damages for bodily injury as defined by terms of the Commercial Liability Umbrella Coverage Form of the Policy.

38.

The damages alleged to be sought in the Complaint do not constitute damages for property damage as defined by terms of the Commercial Liability Umbrella Coverage Form of the Policy.

39.

The claims asserted in the *Wexler* complaint are excluded from coverage by the Electronic Data Exclusion contained in Coverage A of the Commercial Liability Umbrella Coverage Form of the Policy.

40.

The damages alleged to be sought in the Complaint do not constitute damages for personal and advertising injury as defined by terms of the Commercial Liability Umbrella Coverage Form of the Policy.

41.

The Complaint does not allege that Peachtree Orthopeadic committed an offense that would fall under the definition of personal and advertising

injury stated in the Coverage B of the Commercial Liability Umbrella Coverage Form of the Policy.

42.

Hanover is in a position of uncertainty and insecurity with respect to its rights and duties under the Policy.

43.

This situation presents a justiciable controversy such as will justify a declaratory judgment as to whether Hanover does indeed owe Peachtree Orthopaedic a defense of the claims asserted in the Complaint.

44.

Hanover is entitled to recover from Peachtree Orthopaedic an amount equal to the cost of the defense of the *Wexler* case paid for by Hanover pursuant to its reservation of rights.

Wherefore, the plaintiff Hanover Insurance Company respectfully prays as follows:

   a.   that it be awarded a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* and F.R.Civ.P. 57, relieving it from any duty to defend the allegations asserted in *David Wexler, individually, and on behalf of a class of all similarly situated individuals, Plaintiff v. Peachtree*

*Orthopaedic Clinic, P.A., Defendant*, Superior Court of Fulton County, Civil Action File No. 2016CV284076.

b.    that it be awarded judgment in the amount of the defense costs paid by Hanover for the defense of the *Wexler* case pursuant to its reservation of rights;  and,

c.    that it be awarded all further relief as this Court may deem equitable and just.

Lokey,Mobley and Doyle, LLP

/s/  Kevin A. Doyle
Kevin A. Doyle
Georgia Bar No. 228449

Attorney for Plaintiff
Hanover Insurance Company

8425 Dunwoody Place
Atlanta, Georgia  30350
(770) 640-9441
kdoyle@mobley-doyle.com